UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CARLOS IRAHETA,<br><br>                        **Plaintiff,**<br><br>v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>                        **Defendant.** | Civ. No. 16-5360 (KM)<br><br>**OPINION** |

### KEVIN MCNULTY, U.S.D.J.:

Mr. Carlos Iraheta brings this action pursuant to 42 U.S.C. § 405(g) to review a final decision of the Commissioner of Social Security ("Commissioner") denying his claims to Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-34, and Supplemental Security Income ("SSI"), 42 U.S.C. § 1381. For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is REMANDED for further consideration.

### I.    BACKGROUND

Mr. Carlos Iraheta appeals a finding that he did not meet the Social Security Act's definition of disability from August 15, 2011 through December 9, 2014—the date of the ALJ's decision. (R. 26-36).[1]

Iraheta applied for DIB and SSI on January 30, 2012. (R. 90-102). Iraheta stated that he has been disabled since August 15, 2011 because of a bacterial infection of the brain. (R. 90). These claims were denied by medical consultants at Disability Determination Services on July 3, 2012, and then denied again upon reconsideration on January 4, 2013. (R. 144-49, 152-63).

---

[1]    Pages of the administrative record (ECF no. 7) are cited as "R. __." The Brief in Support of Plaintiff (ECF no. 12) is cited as "Pl. Br." Defendant's Brief is cited as "Def. Br." (ECF no. 13).

1

On November 13, 2013, Iraheta appeared before ALJ Donna A. Krappa. (R. 44-68). Iraheta was accompanied by his wife, Ms. Maria Iraheta, and counsel, Mr. Robert J. Osborne. (R. 44-68). After the hearing, ALJ Krappa held the record open for Iraheta to submit additional records. (R. 26). The ALJ ordered a supplemental hearing with testimony from a medical expert, Dr. Martin Fechner. (R. 26, 69-87).

On December 9, 2014, ALJ Krappa issued a decision finding that Iraheta was not disabled from August 15, 2011 through December 9, 2014. (R. 26-36). On July 6, 2016, the Appeals Council denied Iraheta's request for review, rendering the ALJ's decision the final decision of the Commissioner. (R. 1-8). Iraheta then appealed to this Court, challenging the ALJ's determination that he was not disabled.

## II. DISCUSSION

To qualify for DIB or SSI, a claimant must meet income and resource limitations and show that he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382, 1382c(a)(3)(A),(B); 20 C.F.R. § 416.905(a); see Illig v. Comm'r Soc. Sec., 570 F. App'x 262, 264 (3d Cir. 2014); Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 503 (3d Cir. 2009).

### A. The Five-Step Process and This Court's Standard of Review

Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. This Court's review necessarily incorporates a determination of whether the ALJ properly followed the five-step process prescribed by regulation. The steps may be briefly summarized as follows:

**Step One:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, move to step two.

**Step Two:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.

**Step Three:** Determine whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. pt. 404, subpt. P, app. 1, pt. A. (Those Part A criteria are purposely set at a high level to identify clear cases of disability without further analysis.) If so, the claimant is automatically eligible to receive benefits; if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).

**Step Four:** Determine whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If not, move to step five.

**Step Five:** At this point, the burden shifts to the Commissioner to demonstrate that the claimant, considering his age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

As to all legal issues, this Court conducts a plenary review. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). As to factual findings, this Court adheres to the ALJ's findings, as long as they are supported by substantial evidence. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citing 42 U.S.C. § 405(g)). Where facts are disputed, this Court will "determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Zirnsak v. Colvin*, 777 F.3d 607,

610 (3d Cir. 2014) (internal quotation marks and citation omitted). Substantial evidence "is more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Id.* (internal quotation marks and citation omitted).

> [I]n evaluating whether substantial evidence supports the ALJ's findings ... leniency should be shown in establishing the claimant's disability, and ... the Secretary's responsibility to rebut it should be strictly construed. Due regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in this administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails.

*Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (internal quotation marks and citations omitted). When there is substantial evidence to support the ALJ's factual findings, however, this Court must abide by them. *See Jones*, 364 F.3d at 503 (citing 42 U.S.C. § 405(g)); *Zirnsak*, 777 F.3d at 610-11 ("[W]e are mindful that we must not substitute our own judgment for that of the fact finder.").

This Court may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Commissioner's decision, or it may remand the matter to the Commissioner for a rehearing. *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865-66 (3d Cir. 2007); *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984).

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five-step inquiry. *See Podedworny*, 745 F.2d at 221-22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119-20 (3d Cir. 2000). It is also proper to remand where the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted).

### B. The ALJ's Decision

The ALJ followed the five-step process in determining that Iraheta was not disabled from August 15, 2011 through December 9, 2014. Her findings may be summarized as follows:

**Step One:** At step one, the ALJ determined that Iraheta had worked after the alleged disability onset date, but this work activity did not rise to the level of substantial gainful activity. (R. 28-29).

**Step Two:** At step two, the ALJ determined that Iraheta had the following severe impairments: neurocysticercosis resulting in seizures and cognitive difficulties; hypertension; and diabetes. (R. 29).

**Step Three:** At step three, the ALJ found that, from August 15, 2011 through December 9, 2014, Iraheta did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P., app. 1. (R. 29-31).

**Step Four:** At step four, "[a]fter careful consideration of the entire record," the ALJ found that Iraheta has the following RFC:

> [T]he claimant is capable of the exertional demands of work at all exertional levels as defined under the Regulations; regarding the *postural and environmental demands* of work, I find that the claimant is able to perform jobs: that require no use of ladders, ropes, or scaffolds; that require unlimited use of ramps or stairs; that require unlimited occasional balancing, stooping, kneeling, crouching, and/or crawling; and that require no exposure to unprotected heights, hazards or dangerous machinery. Furthermore, as to the *mental demands* of work, I find that the claimant is able to perform jobs: that are simple and repetitive; that require only an occasional change in the work setting during the workday; and that require only occasional contact with supervisors, co-workers, and/or general public.

(R. 31). The ALJ found that Iraheta's medically determined impairments could reasonably be expected to cause the alleged symptoms, but found that Iraheta's statements concerning the intensity, persistence and limiting effects of these symptoms were "not entirely credible." (R. 32-35).

5

The ALJ determined that Iraheta was capable of performing past relevant work as a landscape laborer and dishwater. "This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity." (R. 35).

Since the ALJ found that Iraheta could perform past relevant work, she did not continue to step five.

### C. Analysis of Carlos Iraheta's Appeal

Iraheta challenges ALJ Krappa's determination that he was not disabled from August 15, 2011 through December 9, 2014. He claims that the ALJ committed errors at steps three and four. At step three, Iraheta argues, the ALJ (a) the ALJ should have found that his neurocysticercosis and residual impairments met or equaled Listing 12.02, and (b) the ALJ failed to consider the evidence and effects of his combined severe impairments. (Pl. Br. 29-36). At step four, Iraheta argues, the ALJ did not conduct a full RFC assessment. (Pl. Br. 37-40).

#### 1. The ALJ's Step Three Evaluation

At step three, the ALJ determined that Iraheta did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P., app. 1, pt. A. (R. 29-31). As noted previously, those Part A criteria are purposely set at a high level to identify clear cases of disability without further analysis.

Specifically, Iraheta argues that the ALJ erred by not (a) finding that he met the criteria for Listing 12.02 (neurocognitive disorders) or (b) finding that the evidence and effects of his combined severe impairments equals the severity of one of the listed impairments.

##### a) Listing 12.02

First, Iraheta claims that he meets Listing 12.02 (neurocognitive disorders). To qualify under Listing 12.02 at the time of Iraheta's hearing, a claimant needed to satisfy Paragraphs A and B; or Paragraph C. ALJ Krappa found that Iraheta did not satisfy the requirements of Paragraphs B or C. (R. 29-30).

### i. Paragraph B

At the time of the hearing, Paragraph B required at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. 20 C.F.R. pt. 404, subpt. P., app. 1, pt. A. (2014). A "marked limitation" is "more than moderate but less than extreme." 20 C.F.R. § 416.926a(e)(2). It must "interfere seriously with [one's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C).

In terms of activities of daily living, the ALJ found that Iraheta had mild restrictions. (R. 30). She considered the testimony of the claimant and his wife, which provided that Iraheta has some difficulties but is able to wash dishes, cook meals, go to the grocery store, and take care of his personal hygiene. (R. 30). Iraheta also reported during a June 2012 examination that he was independent with his activities of daily living. (R. 463). In terms of social functioning, the ALJ determined that Iraheta had moderate difficulties. (R. 30). She considered the testimony of Iraheta's wife in making this determination. (R. 30). A February 2012 adult function report also notes that Iraheta liked to socialize and did so often. (R. 319).

Regarding concentration, persistence, or pace, ALJ Krappa found that Iraheta had moderate difficulties. (R. 30). She based her decision on Iraheta's testimony that he had some difficulty in sustaining focus and memory while undergoing treatment for neurocysticercosis. (R. 30). There is also evidence from a May 2012 examination that Iraheta's mental status examination was normal. (R. 443). Moreover, according to his wife's testimony, he started working again but stopped unrelated to his neurocognitive status. (R. 59). He stopped, apparently, because of his diabetes and because "the sun didn't make him feel good." (R. 59).

Furthermore, the state agency psychologists determined that Iraheta had only mild limitations in activities of daily living; moderate difficulties in

7

maintaining social functioning; and moderate difficulties in maintaining concentration, persistence, and pace. (R. 95, 124). This provides evidence that Iraheta does not meet the requirements under Listing 12.02. Additionally, the ALJ determined, based on the medical record, that Iraheta had no episodes of decompensation. (R. 30, 95, 124).

Ultimately, the ALJ found that Iraheta did not satisfy the requirements of Paragraph B and this determination is supported by substantial evidence from the medical record and testimony.

### ii. Paragraph C

At the time of the hearing, Paragraph C required a medically documented history of a chronic organic mental disorder, lasting at least two years, that has caused "more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medical or support," and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or
2. A residual disease process that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
3. Current history of 1 or more year's inability to function outside of a highly supportive living arrangement, with an indication of continued need for such arrangement.

20 C.F.R. pt. 404, subpt. P., app. 1, pt. A. (2014).

The ALJ found that Iraheta is capable of functioning independently outside of his home. (R. 30). She noted that Iraheta drives a car, his doctor found no reason to suspend his driving privileges, and "other evidence of record does not establish that he is incapable of functioning independently outside the area of his home." (R. 30). Iraheta does not meet condition (1) because there are no record of episodes of decompensation. (R. 95, 125). In terms of condition (2), Iraheta has not shown that even a minimal increase in mental demands or a change in environment would cause him to decompensate. Condition (3) is not satisfied because Iraheta functions outside of a highly

8

supportive living arrangement and has only mild limitations in activities of daily living. (R. 95, 124).

The ALJ found that Iraheta failed to meet the Paragraph C standard. Considering the medical record and testimony, there was substantial evidence to support the ALJ's decision regarding Paragraph C.

### b) Combined Severe Impairments

Iraheta argues that the ALJ failed to adequately evaluate the combined effect of his individual impairments. At step three, the ALJ must perform "an analysis of whether and why [the claimant's individual impairments], or those impairments combined, are or are not equivalent in severity to one of the listed impairments." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000). The Third Circuit has clarifies that this "does not require the ALJ to use particular language or adhere to a particular format," but only to "ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). Regulations give further guidance, providing that where a claimant has multiple impairments, the ALJ should "compare [the claimant's] findings with those for closely analogous impairments. If the findings related to [the claimant's] impairments are at least of equal medical significance to those of a listed impairment, [the ALJ] will find that [the claimant's] combination of impairments is medically equivalent to that listing." 20 C.F.R. § 404.1526(b)(3).

Here the ALJ satisfied the Third Circuit's standard and the regulations. ALJ Krappa concluded that Iraheta failed to meet a key element of each relevant Listing. (R. 29-30). She considered Listings 11.02, 11.03, 11.17, and 12.02 and gave specific findings as to why Iraheta did not satisfy each Listing's requirements. (R. 29-30). For example, the ALJ noted that Iraheta did not meet the requirements of Listing 11.02 regarding convulsive epilepsy because "he does not have seizures occurring at least once a month in spite of three months treatment." (R. 29). Similarly, the ALJ determined that Iraheta did not meet Listing 11.17 because he "does not have significant and persistent disorganization of motor functioning in two extremities resulting in sustained

9

disturbance of gross and dexterous movements, or gait and station." (R. 29). Furthermore, at a supplemental hearing, Dr. Martin Fechner reported that Iraheta's impairments did not meet or equal the listings of the Commission, either singly or in combination. (R. 29, 82-83).

Based on the ALJ's analysis of each Listing and the testimony of Dr. Fechner, the ALJ concluded that "[t]he severity of the claimant's medical impairment does not meet or medically equal the criteria of listing 12.02." (R. 29). The ALJ considered multiple listings, found specific reasons why Iraheta did not qualify, and determined that Iraheta's impairments—when considered in combination—did not equal a Listing. Those findings demonstrate "sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505.[2]

### 2. The ALJ's Step Four Evaluation

At step four, Iraheta argues that ALJ Krappa did not conduct a full RFC assessment. (Pl. Br. 37-40). Iraheta claims that the ALJ (a) failed to discuss "pertinent mental status observations" about concentration, persistence and pace; (b) did not give any weight to the unknown source's opinion regarding functional assessment; and (c) did not address reports that he was likely to miss work more than three times per month. I will discuss each in turn.

First, Iraheta alleges that the ALJ did not discuss "pertinent mental status observations." (Pl. Br. 39). Iraheta specifically identifies an October 2012 opinion from Dr. Feoli that Iraheta needed more supervision at work than an unimpaired worker and could not work at heights, with power machines, or operate a motor vehicle. (Pl. Br. 39); (R. 331). However, Iraheta's RFC incorporates the restrictions that Dr. Feoli articulated. (R. 31). The RFC restrictions limit Iraheta to work that does not require ladders, ropes, or

---

[2]   Iraheta does not identify which Listing the ALJ should have determined that his impairments met or equaled when considered in combination. (Def. Br. 24); (Pl. Br. 35-37). *See Johnson v. Comm'r of Soc. Sec.*, 398 F. App'x 727, 734 n.5 (3d Cir. 2010) (finding that claimant should have identified any "closely analogous" Listing to which her combined impairments might be medically equivalent). Regardless, it does not appear that Iraheta's impairments, in combination, would have equaled any of the other relevant listings.

10

scaffolds; and requires no exposure to unprotected heights, hazards, or dangerous machinery. (R. 31). The RFC does not include a driving restriction, but the record shows that Iraheta was driving in 2013 and 2014. (R. 1567, 2428). Additionally, Iraheta's RFC limits him to work that is "simple and repetitive; that require only an occasional change in the work setting during the workday; and that require only occasional contact with supervisors, co-workers, and/or the general public." (R. 31). This is supported by Dr. Fechner's 2014 report that, although he *had* problems with memory at the height of his medical problems, Iraheta's condition has improved. (R. 34). This accounts for the mental status observations in the record. Overall, the ALJ considered Dr. Feoli's opinion and had substantial evidence for her RFC determination.

Second, Iraheta notes that the ALJ did not give weight to an October 18, 2012 unknown source's opinion that Iraheta had marked and/or extreme limitations. (Pl. Br. 39-40); (R. 34); (R. 639-40). This Court has found that when a form is filled out by physician whose name and qualifications are unknown, "the form should have been given *no* weight." *Cannon v. Heckler*, 627 F. Supp. 1370, 1375 (D.N.J. 1986). This is particularly relevant when the unidentified physician fills out a checklist and does not state any reason for his opinion. *Bryant v. Schweiker*, 537 F. Supp. 1, 1 (E.D. Pa. 1982). In this case, the ALJ did not need to give weight to this unknown source's opinion given that the source is unidentified and there are no stated reasons for the conclusion. Nonetheless, ALJ Krappa considered this opinion when making her RFC determination. (R. 34).

Third, Iraheta claims that ALJ Krappa did not address reports that he was likely to miss work more than three times a month. (Pl. Br. 39). This is particularly relevant because the vocational expert's testimony at the November 5, 2014 hearing stated that an individual in Iraheta's circumstances who would be absent three times or more per month could not perform any unskilled or skilled work. (R. 66).

Dr. Feoli's October 2012 seizure questionnaire and the unknown medical source opinion from October 18, 2012 both report that Iraheta was likely to

11

miss work more than three days per month. (R. 332, 639-40). As stated above, an ALJ did not need to give weight to an opinion from an unknown medical source, especially when the source does not provide reasons for the opinion.

Nonetheless, Dr. Feoli made the same determination. Iraheta argues that, as the opinion of his treating physician, Dr. Feoli's opinion should have been given controlling weight, or at least that the ALJ should have provided clear reasons why controlling weight was not given. (Pl. Br. 39-40). Relevant regulations provide that more weight is generally given to opinions from treating sources. 20 C.F.R. § 416.927(c)(2). When a treating source's opinion is not given controlling weight, an ALJ should consider the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; supportability; consistency; specialization; and other relevant factors. *Id.* § 416.927(c)(2)–(6).

ALJ Krappa's RFC determination accounted for Dr. Feoli's opinion by limiting Iraheta to work that did not require ladders, ropes or scaffolds; and had no exposure to unprotected heights, hazards, or dangerous machinery. (R. 31). This suggests that ALJ Krappa gave weight to at least parts of Dr. Feoli's opinion. However, the ALJ did not address Dr. Feoli's opinion of Iraheta's absenteeism or why this opinion was not given controlling weight. An ALJ should provide reasons for not giving controlling weight to the medical opinion of a treating physician. 20 C.F.R. § 416.927(c)(2).

Defendants cite to *Littleton v. Commissioner of Social Security*, No. 5:12-CV-2756, 2013 WL 6090816, at *3 (N.D. Ohio Nov. 19, 2013), for the proposition that a doctor's statement that "an individual would miss three or more days of work per month—a statement that would preclude work—is tantamount to a statement of disability and is therefore not a medical opinion ... entitled to any special weight." (Def. Br. 28). In *Littleton*, that proposition was part of the magistrate judge's recommendation that was not adopted by the district judge. *Id.* at *3. The ALJ in *Littleton* also addressed

provided specific reasons why he assigned "little weight" to the doctor's opinion. *Id.* at *2.

In this case, the ALJ did not address Dr. Feoli's opinion on Iraheta's potential absenteeism, did not provide reasons for not crediting this opinion, and did not explain why she made an alternative decision. An ALJ does not need to address all of the regulatory factors or every piece of medical evidence. But, in circumstances like this, an ALJ must explain why she does not credit pieces of evidence that clearly contradict her finding. *Lusardi v. Astrue* presented a similar situation: an ALJ rejected a doctor's opinion that a claimant was likely to be absent from work three days per month, which the vocational expert considered a critical factor in determining whether the claimant had the ability to perform a significant number of jobs in the national economy. 350 F. App'x 169, 171-72 (9th Cir. 2009). In *Lusardi*, the ALJ stated that he considered the relevant guidance factors listed in the Code of Federal Regulations, mentioned the infrequency of the claimant's visits to the doctor, noted the lack of support for the opinion in the medical records, and found an inconsistency between the doctor's opinion and other opinions he had rendered. *Id.* at 172. The Ninth Circuit affirmed, noting that the ALJ's "stated reason for giving minimal weight to [the doctor's] absenteeism opinion was clear and convincing and supported by substantial evidence." *Id.*

Here, the ALJ might find that Dr. Feoli's October 2012 opinion is not supported by the medical record—or perhaps that the likelihood of absenteeism applied only to a certain period within the claimed period of disability. However, given that the likelihood of absenteeism was a critical factor relied on by the vocational expert, the ALJ must address Dr. Feoli's October 2012 contention that Iraheta was likely—at least in that time frame—to miss work more than three days a week, as this might imply that Iraheta was then disabled.

### III. Conclusion

I will therefore remand to the agency for further evaluation of the 2012 evidence that Iraheta would be absent from work more than three days per month.

An appropriate order accompanies this Opinion.

Dated: October 19, 2017

KEVIN MCNULTY
United States District Judge